IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Broderick William Seay, Jr., ) | |
| ) | C/A No. 2:17-2814-TMC |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Sheriff Al Cannon, ) | |
| ) | |
| Respondent. ) | |

Petitioner Broderick William Seay, Jr., a state pretrial detainee, is seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. (ECF No. 1).[1] Petitioner filed a "Motion of Objection for Extension of Time/Dismissal of Charge as Bias and Prejudice" (ECF No. 14) and a motion for summary judgment (ECF No. 29). Respondent has also filed a motion for summary judgment. (ECF No. 17). Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that Petitioner's motions (ECF Nos. 14 and 29) be denied and Respondent's motion for summary judgment (ECF No. 17) be granted. (ECF No. 38). Petitioner timely filed objections (ECF No. 39), and Respondent filed a reply to those objections (ECF No. 41). For the reasons stated below, the court adopts the Report as modified and denies Petitioner's motions and grants Respondent's summary judgment motion, but grants Petitioner a certificate of appealability.

**I. Background/Procedural History**

Petitioner is currently a pretrial detainee at the Al Cannon Detention Center. In March of 2015, Petitioner was indicted for murder (ECF No. 16-1), and on July 26, 2016, a jury trial began

---

[1]Petitioner was originally proceeding pro se, but he has since retained counsel. (ECF No. 22). Petitioner, through counsel, responded to Respondent's motion for summary judgment and also filed his own motion for summary judgment. (ECF Nos. 29 and 30).

with State Circuit Court Judge Thomas Cooper presiding. (ECF No. 29-2 at 1).[2] Several witnesses testified on July 26th. *Id.* at 43-224. After one witness testified on the morning of July 27th, the State informed the trial judge that its next witness, the co-defendant's girlfriend at the time of the murder, Starteasha Grant ("Grant"), was not cooperating and had not shown up for court at 9:00a.m. as directed. (ECF No. 29-2 at 231). Specifically, the assistant solicitor stated:

> She is our significant witness. She is the one who sees Mr. Seay with Mr. Howard and Ty after their coming off of Wadmalaw Island. She was the person who then goes to her apartment, sees them taking the tote bag with the weapon or which she believes the weapon is still in the bag, tried to take that into her apartment and puts a halt to that. They then travel to Montague Avenue, try to get a hotel room. And they leave Mr. Seay behind at the Waffle House.
>
> She is the person who sets all of that out for us. I will tell Your Honor that we met with her last Friday. We spoke to her by phone on Saturday. I think even Mr. McCoy was able to reach her Sunday. Since then she has not been cooperative with our office at all. Mr. Hair, my investigator, is present in the courtroom. He has been to her apartment. He has been to her employment. He has spoken to two of her sisters. They indicated that they felt like -- they indicated that she indicated that she had been threatened. I texted her last night and asked her to come to our office at 8:30, that she needed to be in court at 9:00. Mr. Hair texted her and told her that she needed to be present at 9:00 over at the courthouse and I believe he told her a bench warrant will be issued if she did not show.
>
> Since then she did respond to him indicating that she was not going to come, that she was frightened. And so, Your Honor, at this time the State is asking for a bench warrant to be issued against her and for you to allow us some time for the deputies to make that effort.

*Id.* at 231-32. Defense counsel stated he did "not have any issue with a bench warrant being issued" and it was "not really [his] call." *Id.* at 232-33. At 11:12a.m., the trial judge issued a bench warrant for Grant's arrest and recessed the trial for the day. *Id.* at 235-36.

The next morning, the assistant solicitor informed the trial judge that Grant had not been

---

[2]On July 25, 2016, The trial judge had granted a one-day continuance prior to the jury being selected in order that the parties could review some new evidence. (ECF No. 16-5 at 3).

2

located, and the State moved for a mistrial. *Id.* at 238-44. The assistant solicitor informed the court that Grant had been served with a subpoena in June, and that she had met with Grant on Friday to go over her testimony. *Id.* at 238.[3] Further, the assistant solicitor stated that someone from the Solicitor's Office had spoken with Grant on Saturday and Defense counsel had spoken to her on Sunday, and that Grant did not appear for court on Wednesday as directed. *Id.* at 238-39. Further, the assistant solicitor stated that Grant's sisters indicated to the State investigator that they had not seen Grant since Saturday and that a text message had been sent to the investigator from Grant's phone, which indicated that Grant was scared and would not be coming to court. *Id.*[4] The assistant solicitor stated that the State had enlisted the help of the United States Marshal's Office and had been in contact with them that day, but it had no success in locating Grant. *Id.* Petitioner's trial counsel opposed the motion arguing that the State had not shown manifest necessity. (ECF No. 29-2 at 245-47).[5] Trial counsel argued that the State still had three or four remaining witnesses that it

---

[3]The proof of service for the subpoena in the record shows that on June 23, 2016, Grant was served with the subpoena to appear at trial the week of July 25, 2016. (ECF No. 16-2 at 12-13).

[4]The text message from Grant to the State's investigator provides as follows:

> I been losing a lot of sleep over the last 3 days, I'm scared as hell, I can't afford for any of my loved ones to be harmed, I am all that my son has he has no daddy so I decided not to take the stand and I'm willing to accept all consequences. Jail time is better than leaving my son in this world without a mother.

(ECF No. 1-1 at 22).

[5]At the hearing on the subsequent motion to dismiss before State Circuit Court Judge Marley R. Dennis, Jr., defense counsel also stated that there were e-mails indicating that the State had attempted to contact Grant throughout the week of the trial and there had been no response from her. (ECF No. 16-5 at 8). This information, however, was not before the trial judge.

could call. *Id..* at 245.⁶ The trial judge granted the motion for a mistrial finding that the State had been caught by surprise and that Grant was a critical witness for the prosecution. (ECF No. 29-2 at 250-51). The trial judge stated that he thought the case fell under the rubic of *Arizona v. Washington,*⁷ and he found a manifest necessity to grant a mistrial. (ECF No. 29-2 at 251-52).

A day later, on Friday, July 29, 2016, Grant was taken into custody, and she was found to be in contempt of court and ordered to remain in custody "with the ability to purge herself of contempt by complying with the subpoena and testifying in the case of State of South Carolina versus Broderick Seay, scheduled for the December 12, 2016 term of court." (ECF Nos. 16-3, 16-4). On August 22, 2016, she was found in contempt of court and ordered to remain in custody with the ability to purge herself by testifying at Petitioner's trial, which was at that time scheduled for the December 12, 2016 term of court. (ECF No. 16-4). She since been released from jail. (ECF Nos.16 at 3 n.1, 16-5 at 26).

On July 17, 2017, Petitioner's counsel filed a motion to dismiss in state court alleging that the indictment was a violation of double jeopardy. (ECF No. 1-1). The State opposed Petitioner's motion. (ECF No. 16-2). After a hearing on the motion, on October 17, 2017, Judge Dennis denied Petitioner's motion to dismiss. (ECF No. 16-6).⁸ During this hearing, defense counsel noted that the State was inconsistent in its recitation of its attempts to contact Grant. (ECF No. 16-5 at 8).

---

⁶Defense counsel also noted that at the trial of Petitioner's co-defendant, Kevin Howard, Grant testified with charges pending against her, but those charges were dismissed prior to Petitioner's trial. (ECF No. 29-2 at 247).

⁷*Arizona v. Washington*, 434 U.S. 498 (1978).

⁸Judge Dennis granted Petitioner a continuance - basically staying a re-trial pending a ruling on the instant habeas petition. (ECF No. 16-7 at 4).

4

Initially, defense counsel noted that he had emails from the State "indicating that they had tried contacting [Grant] via text message throughout the week of trial, and did not get a response from her." *Id.* Later, he stated that there were inconsistencies - the State initially represented that it had messaged Grant all week without any response and later the State stated it had called Grant only the night before she was to testify. (ECF No. 16-5 at 16). Defense counsel acknowledged that the State had subpoenaed Grant, but argued that the State should have made contact with Grant the first day of trial to ensure her presence at the trial. (ECF No. 16 at 32). In response, at the hearing on the motion to dismiss, the State noted that it had "contacted [Grant] throughout the week and said, you need to be in courtroom such and such at nine o'clock in the morning on this day, to let her know we expected her to be there to testify." *Id.* at 26. In his written order, Judge Dennis denied the motion to dismiss. (ECF No. 16-6). He found that the State was caught by surprise and not to blame for Grant's failure to appear, and held that the mistrial was warranted by manifest necessity. (ECF No. 16-6 at 7).

Petitioner, proceeding pro se, filed this § 2241 habeas petition the next day. (ECF No. 1).[9] The response to the Petition was due on January 3, 2018 (ECF No. 7 at 2). On January 3, 2018, Respondent filed a motion for an extension of time within which to file a response, or otherwise plead, which the magistrate judge granted on January 8, 2018. (ECF Nos. 11 and 12). Respondent thereafter timely filed its response and motion for summary judgment on February 2, 2018. (ECF

---

[9]The court notes that habeas relief under § 2254 is not available when a person charged in state court raises a pretrial challenge such as a double jeopardy claim. *See Benson v. Superior Court Dep't of Trial Court*, 663 F.2d 355, 358 (1st Cir. 1981); *see also Montez v. McKinna*, 208 F.3d 862, 870 (10th Cir. 2000) (McKay, Circuit Court Judge, concurring in part; dissenting in part) (collecting cases); *Jacobs v. McCaughtry*, 251 F.3d 596, 597-98 (7th Cir. 2001) (collecting cases).

5

No. 16 and 17). On February 15, 2018, Petitioner filed a response to the Respondent's summary judgment motion. (ECF No. 20). Then, on March 15, 2018, after having been granted leave to do so, Petitioner, through counsel, filed another response to the Respondent's summary judgment motion and his own motion for summary judgment. (ECF Nos. 24, 29, and 30). On March 29, 2018, Respondent filed a response opposing Petitioner's summary judgment motion (ECF No. 33) and a reply to Petitioner's pro se response (ECF No. 34). On April 16, 2018, Petitioner filed a reply to Respondent's response. (ECF No. 37).[10]

---

[10]The court notes, as the magistrate judge stated, that abstention pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), is not warranted here. (Report at 5 n.4). However, the court believes it is necessary to elaborate on that issue. In *Robinson v. Thomas,* 855 F.3d 278 (4th Cir. 2017), the Fourth Circuit Court of Appeals held that in *Nivens v. Gilchrist ("Nivens I")*, 319 F.3d 151 (4th Cir. 2003), it had clarified the scope of its decision in *Gilliam v. Foster*, 75 F.3d 881 (4th Cir. 1996):

> In *Nivens I*, we clarified the scope of our decision in *Gilliam. Nivens I* concerned whether a district court properly abstained under *Younger* from intervening in a pending state criminal drug prosecution that began after the appellants had paid North Carolina's drug tax. *Nivens I*, 319 F.3d at 152. The appellants argued that the Double Jeopardy Clause barred the later criminal prosecution because the drug tax was a criminal penalty that had been satisfied; in effect, they alleged they were being twice punished for the same offense. *Id.* at 152-53. Relying on *Gilliam,* the appellants argued that abstention was improper because "a colorable claim of a double jeopardy violation [was] sufficient to establish exceptional circumstances warranting federal court intervention without any separate showing." *Id.* at 159 (internal quotation marks omitted). We rejected that reading of *Gilliam,* explaining "[w]e did not hold that an allegation of a double jeopardy violation automatically precludes *Younger* abstention." *Id.*

855 F.3d at 287. The Fourth Circuit stated that petitioners may not seek federal intervention into their pending state court litigation for a violation of the Double Jeopardy Clause unless they show that the state's pretrial procedures are not able to afford them adequate protection. *Id.* at 289. Here, as the South Carolina Supreme Court has held that an appeal from this type of motion would be interlocutory until after a second trial, *State v. Rearick,* 790 S.E.2d 192, 195 (S.C. 2017) (holding that denial of defendant's motion, following mistrial, to dismiss any subsequent prosecution on double jeopardy grounds was interlocutory order from which no appeal could be taken), Petitioner has shown that he will be unable to further pursue his double

## II. Applicable Law

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

## III. Discussion

The Report has no presumptive weight and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). In the absence of objections to the Report, this court is not required to provide an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only

---

jeopardy defense at the state level before being put to trial. Accordingly, the court finds that abstention is not warranted here.

satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

In his § 2241 petition, Petitioner asserts that his "Fifth Amendment rights would be violated if he is subjected to a second trial where a mistrial was improvidently granted." (ECF No. 1 at 6). Petitioner asks this court to "find that a subsequent trial should be prohibited on the grounds of double jeopardy." (ECF No. 1 at 7). As noted above, Petitioner filed a motion to dismiss and a motion for summary judgment (ECF Nos. 14 and 29), and Respondent also filed a motion for summary judgment (ECF No. 17).

In her Report, the magistrate judge recommends that the court deny Petitioner's motion to dismiss. (Report at 13). The magistrate judge determined that Respondent had timely filed its response after having been granted an extension of time within which to file its response. (Report at 5 n.3). Petitioner has not objected to this portion of the Report, and finding no clear error, the court adopts this part of the Report. Accordingly, Petitioner's motion to dismiss is denied.

In her Report, the magistrate judge also recommends that the court deny Petitioner's motion for summary judgment and grant Respondent's motion for summary judgment. (Report at 13). Specifically, the magistrate judge determined that there was manifest necessity for the trial court to grant the mistrial under *Arizona v. Washington*, 434 U.S. 497, and, therefore, Petitioner's re-trial would not violate double jeopardy.

Petitioner raises several specific objections. (ECF No. 39). Petitioner objects to the magistrate judge's: (1) failure to correctly apply the "strictest scrutiny" standard of *Arizona v. Washington*; (2) failure to analyze the facts of this case under *United States v. Shafer*, 987 F.2d

8

1054 (4th Cir. 1993); (3) failure to analyze the facts of this case under *Cornero v. United States*, 48 F.2d 69 (9th Cir. 1931); (4) application of *Downum v. United States*, 372 U.S. 734 (1963); (5) apparent use of a harmless error analysis; and (6) recommendation that a certificate of appealability be denied. *Id.*

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see Benton v. Maryland,* 395 U.S. 784, 794 (1969). Among other things, the Double Jeopardy Clause protects a criminal defendant from facing "repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). There are circumstances under which retrial is permitted after a criminal proceeding has ended in mistrial. For example, if a defendant requests or consents to a mistrial, the Double Jeopardy Clause will not bar retrial unless the prosecutor has engaged in conduct intended to provoke the mistrial request. *See Kennedy*, 456 U.S. at 675-76. If the defendant opposes the declaration of a mistrial, however, retrial is prohibited unless there was a manifest necessity for the mistrial or the failure to declare a mistrial would have defeated the ends of justice. *See Wade v. Hunter*, 336 U.S. 684, 690 (1949).

Whether the declaration of a mistrial is manifestly necessary turns on the facts before the trial court. *See Illinois v. Somerville*, 410 U.S. 458, 464 (1973); *see also Arizona v. Washington*, 434 U.S. at 506 (explaining that the "manifest necessity" standard cannot "be applied mechanically or without attention to the particular problem confronting the trial judge"). While manifest necessity for a mistrial does not require that a mistrial be "necessary" in the strictest sense of the word, it does require a high degree of necessity. *See Arizona v. Washington*, 434 U.S. at 506. "[T]he key word

9

'necessity' cannot be interpreted literally; instead . . . we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." *Id.* The clearest example of a situation in which manifest necessity exists for a mistrial is when a jury is unable to reach a verdict. *Id.* at 509. At the other extreme are situations in which the prosecution seeks a mistrial in order to have additional time to strengthen its case against the defendant or to otherwise obtain a tactical advantage over the defendant. *Id.* at 508. Between these two extremes exists a spectrum of trial situations, some creating manifest necessity for a mistrial and others falling short of justifying a mistrial. *Id.*

"If the grant of a mistrial by the trial judge amounts to an irrational or irresponsible act, he must be found to have abused his discretion in finding that manifest necessity for the mistrial existed." *Gilliam v. Foster,* 75 F.3d at 881, 894 (4th Cir. 1996). In making this assessment, the court construing Supreme Court precedent, held that a reviewing court should consider "whether a trial judge rationally could conclude that the grant of the mistrial was compelled by manifest necessity or whether the ends of public justice demanded that one be granted on the peculiar facts presented." *Id.* Additionally, a reviewing court should consider whether the judge "acted precipitately or whether the trial judge expressed concern regarding the possible double jeopardy consequences of an erroneous declaration of a mistrial, heard extensive argument on the appropriateness of such a measure, and gave appropriate consideration to alternatives less drastic than granting a mistrial." *Id.* at 895.

Moreover, "[i]n order to determine if the mistrial was required by manifest necessity, the critical inquiry is whether less drastic alternatives were available." *United States v. Shafer,* 987 F.2d 1054, 1057 (4th Cir. 1993) (citing *Harris v. Young*, 607 F.2d 1081, 1085 n.4 (4th Cir.1979)). *See*

*also United States v. Jorn*, 400 U.S. 470 (1971) (holding that it was an abuse of discretion for trial judge to declare a mistrial without considering alternatives to the mistrial). A continuance is one viable alternative to declaring a mistrial. *See Jorn*, 400 U.S. at 487 (internal citation omitted). When such alternatives exist, manifest necessity does not exist for a mistrial. *See Shafer*, 987 F.2d at 1058. "In all cases, the determination of a trial court that a mistrial is manifestly necessary is entitled to great deference." *Sanders v. Easley*, 230 F.2d 679, 686 (4th Cir. 2000) (citing *Arizona v. Washington*, 434 U.S. at 510)). Having set forth the applicable law, the court will address each of Petitioner's objections in turn.

**A.  *Arizona v. Washington***

In her Report, the magistrate judge discusses the holding in *Arizona v. Washington* in depth, and clearly uses it as the framework for analyzing whether manifest necessity warranted the declaration of a mistrial. (Report at 6-7). She specifically quotes that "[t]he strictest scrutiny is appropriate when the basis for mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or achieve a tactical advantage over the accused." (Report at 7) (citing *Arizona v. Washington*, 434 U.S. at 508) (footnotes omitted). Petitioner, however, contends that the magistrate judge failed to properly apply the "strictest scrutiny" set forth in *Arizona v. Washington*. Specifically, he contends that the magistrate judge erred by finding manifest necessity because: (1) the trial judge did not consider alternatives; (2) the mistrial provided a tactical advantage to the prosecution; and (3) the trial judge acted precipitately by granting a mistrial less than twenty-four hours after being informed that the witness was missing. (ECF No. 39 at 2-6). In its response, Respondent contends that the magistrate judge "carefully announced and utilized [the standard set forth in *Arizona v. Washington*]

11

throughout the report." (ECF No. 41 at 1). Further, Respondent contends that the magistrate judge correctly rejected Petitioner's arguments as to these issues. (ECF No. 41 at 1-2).

First, here, there is no evidence that, by moving for a mistrial, the State sought to obtain a tactical advantage or engaged in any misconduct. Petitioner makes much of the fact that the third alleged co-defendant, Ty Laval Drayton, was tentatively identified by Grant immediately before Petitioner's trial. (ECF No. 29-3).[11] Petitioner speculates that the mistrial gives the State an opportunity to pit Ty against Petitioner at a new trial. (ECF No. 39 at 5). However, unlike in *Shafer*, the trial judge did not state that the State's case would be strengthened with Ty's involvement. And there is nothing in the record that suggests that the trial judge was aware of anything which would give the prosecution an advantage or had engaged in any misconduct. In fact, the State referred to Ty as "an unknown Ty" before the trial judge (ECF No. 29-2 at 248), and Ty Drayton was not arrested until almost four months later on November 16, 2016. (ECF No. 29-5). There is nothing in the record which would lead this court to conclude that the State had engaged in any misconduct or was seeking to obtain a tactical advantage.

Petitioner also contends that the trial judge acted precipitately by declaring a mistrial less than twenty four hours after being informed of the missing witness and by failing to consider

---

[11]On June 23, 2016, while preparing Grant for her testimony in Petitioner's trial, the assistant solicitor asked Grant about Ty. (ECF No. 29-3). Grant described Ty as "approximately 5'10" tall, brown skin, low haircut, might have a beard, might have gold in his mouth, and probably between 180-200 pounds." *Id.* The assistant solicitor ran the name "Ty" through a database and compiled a list of those who met Grant's description. *Id.* He showed Grant multiple photographs of persons named Ty from the detention center, and when he showed Grant a photograph of Tyrone Laval Drayton, Grant stated that she was 90% sure that he was the Ty involved in the murder. *Id.* She told him she could be 100% sure if she could see inside his mouth. *Id.* The assistant solicitor stated at that point, he dropped the subject and continued preparing Grant for Petitioner's trial. *Id.* Ty Drayton was not arrested until November 2016. (ECF No. 29-5).

alternatives to a mistrial, such as a continuance. The magistrate judge noted that when the State first brought Grant's absence to the trial judge's attention, "[a] mistrial was not ordered at this point - instead a mistrial was not ordered until approximately 24 hours later, after a recess in which the State (with the assistance of the United States Marshals Service) searched for Ms. Grant." (Report at 11). However, at the time that Grant's failure to appear was brought to the trial judge's attention, the State had not moved for a mistrial, or even mentioned a mistrial. Rather the State requested a bench warrant for Grant's arrest and time to find Grant. (ECF No. 29-2 at 232). The State did not move for a mistrial until after the continuance had been granted, and it had been unable to locate Grant during the twenty-four hour continuance. *Id.* at 239.

What the court is most concerned with is the trial judge's failure to discuss and consider available alternatives prior to granting a mistrial. As noted above, the determination that a mistrial is manifestly necessary is entitled to great deference. *Arizona v. Washington*, 434 U.S. at 510. Moreover, "[i]n order to determine if the mistrial was required by manifest necessity, the critical inquiry is whether less drastic alternatives were available." *United States v. Shafer*, 987 F.2d at 1057 (citing *Harris v. Young*, 607 F.2d at 1085 n.4.). It is an abuse of discretion for a trial judge to declare a mistrial without considering alternatives. *Jorn*, 400 U.S. at 487. *When such alternatives exist*, manifest necessity does not exist for a mistrial. *See Shafer*, 987 F.2d at 1058 (emphasis added).

While the trial judge did not seem to consider another continuance immediately before he granted the mistrial, in light of the circumstances, i.e. Grant's declaration that she did not want to testify, the State's effort's to locate her, including involving the U.S. Marshals' Office, and the fact that a continuance had already been granted, the court finds that no other alternatives were available

13

at that time.[12] In conclusion, there is no doubt that Grant, who at that time was the only witness who could link Petitioner to the murder, was a key witness, and the State was surprised by the refusal of Grant to appear and testify and not merely attempting to gain a tactical advantage. The more difficult question is whether the trial judge considered available alternatives prior to granting the mistrial. The court believes the only reasonable alternatives were to have the State present its remaining witnesses and hope Grant could be located in the interim[13] or continue the trial while the State attempted to locate Grant. As a continuance had already been granted and substantial efforts were already made to locate the absent witness without success, the court defers to the trial judge's ruling that manifest necessity warranted a mistrial.

**B.** *United States v. Shafer*

In *United States v. Shafer*, 987 F.2d 1054, the Fourth Circuit held that the government had failed to show manifest necessity for a mistrial. In that case, during the trial, the government produced a large quantity of discovery, including *Brady* material, which had allegedly been misplaced or lost by a local police department. *Id.* at 1056. The evidence produced was described as being on "a cart that was four feet long and stacked two to three feet high with [the defendant's company's] financial records-records that had never been disclosed to Shafer's lawyers." *Id.* The Fourth Circuit described the government's stipulation that the evidence contained *Brady* material as being an understatement -- as the evidence "destroy[ed] the testimony" of two of the prosecution's witnesses who had testified as to Shafer's failing financial condition. *Id.* Shafer

---

[12]Grant was located the day after the mistrial was declared. Of course, the trial judge could not have known this at the time he declared a mistrial.

[13]The court is not suggesting that the State should have proceeded to rest without Grant's testimony. Rather, the court is suggesting the State could have called its remaining witnesses and continued to look for Grant before a mistrial was declared.

moved to dismiss the case. The trial court denied the dismissal, but then sua sponte declared a mistrial because he found that "the proceedings were 'tainted' by the Government's failure to turn over the discovery materials . . . ." *Id.* Subsequently, Shafer pled guilty, reserving the right to appeal the issue of whether the government showed manifest necessity for the court to declare a mistrial over his objection. *Id.* at 1056-57.

On appeal, the court held that the mistrial was not required by manifest necessity. *Id.* at 1059. The court suggested several alternatives, including granting a continuance to allow Shafer's attorneys an opportunity to study the material and prepare to incorporate it into the trial. *Id.* The court determined that there were available alternatives that would have alleviated the prejudice to Shafer and allowed the trial to continue and that the district court's decision to declare a mistrial was, at least partially, based upon its recognition that the government's case was weakened by the newly discovered materials. *Id.* at 1057.

Petitioner contends that the magistrate judge erred by failing to apply *Shafer* to this case. Petitioner contends that *Shafer* "stands for the proposition that if the trial court's motivation in granting a mistrial 'was partially to rescue the government from a sinking case," then manifest necessity did not exist." (ECF No. 39 at 7) (citing *Shafer*, 987 F.2d 1059). Petitioner states that during an in-chambers off-the-record conference, the trial judge had stated that, based on the evidence that had been represented thus far, he would be inclined to direct a verdict in favor of the defense. (ECF No. 39 at 8). Petitioner contends that "[i]n ordering a mistrial, the trial court referred to Grant as a 'critical witness' for the State, improperly considering, as the trial court did in *Shafer* the prejudice to the prosecution." (ECF No. 29-1 at 7). The court finds *Shafer* is clearly distinguishable from the current case.

In *Shafer*, the trial court stated that, in its opinion, the discovery violations had hurt the government's case. 987 F.3d at 1058. The trial court noted that the testimony from numerous witnesses was affected by the lack of access to the new discovery material. *Id.* at 1059. *Shafer* prohibits a court from "granting a mistrial to allow the prosecution to strengthen its case." *Id.* at 1057. First, in the present case, any discussion in chambers about a potential directed verdict is not in the record, and therefore the court cannot properly consider it. Without a record, there is nothing to establish the context of the alleged statement. Moreover, even if this court were to assume that the trial judge made such a statement in chambers, there is no evidence that the effect of the mistrial upon the strength of the State's case played any role in the court's determination that a mistrial was necessary. A trial court's observation that, prior to Grant's testimony, the State had not meet its burden of proof is a far cry from a determination that the trial court was motivated to rescue a sinking case. As Respondent notes, there was no question that Grant was a critical witness for the State. (ECF No. 16 at 15). Here, there is simply no evidence in the record that the trial judge was motivated to declare a mistrial in an effort to save the State from a sinking case. The mistrial was not granted to strengthen the State's case; it was granted to allow the State an opportunity to present its case as it had planned. Grant was not a new witness. Morever, the parties appreciated the importance of Grant's testimony as Grant's testimony had also been critical to the prosecution of Petitioner's co-defendant, Kevin Howard.

Further, as discussed above, Petitioner makes much of the fact that the third alleged co-defendant, Ty Laval Drayton, was identified immediately preceding Petitioner's trial. Petitioner speculates that the mistrial gives the State an opportunity to pit Ty against Petitioner at a new trial. (ECF No. 39 at 5). However, unlike in *Shafer*, the trial judge did not state that the State's case

16

would be strengthened with Ty's involvement. And as noted above, the State referred to Ty as "an unknown Ty" before the trial judge. (ECF No. 29-2 at 248). Accordingly, the court finds this objection to be without merit.

**C. *Cornero v. United States***

Petitioner contends that the magistrate judge erred by failing to examine the facts of this case under the holding in *Cornero v. United States*, 48 F.2d 69. In *Cornero v. United States*, the defendant's first trial for violations of the National Prohibition Act was discharged when prosecution witnesses, who had not been subpoenaed, failed to appear to testify and could not be located during a five-day continuance. The defendant was convicted at a second trial. The Ninth Circuit Court of Appeals reversed, stating:

> The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. While their absence might have justified a continuance of the case in view of the fact that they were under bond to appear at that time and place, the question presented here is entirely different from that involved in the exercise of the sound discretion of the trial court in granting a continuance in furtherance of justice. The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict. This does not take the case out of the rule with reference to former jeopardy.

48 F.2d at 71. In *Wade v. Hunter*, 336 U.S. 684 (1949), the United States Supreme Court refused to follow the holding in *Cornero*, which it characterized as holding that the absence of witnesses was not such an ''imperious" or "urgent necessity" as to come within the recognized exception to the double jeopardy provision. *Id.* at 691.[14] The Court said:

---

[14]In *Wade*, a United States soldier was being tried for rape before a military court martial in Germany during World War II. After the court martial had begun, the presiding commander concluded that the tactical situation of his command and its distance from the trial site prevented the trial from being completed within a reasonable time frame. The charges against the defendant were withdrawn and later reinstated for trial at a location more convenient for the witnesses. The

17

> We are asked to adopt the *Cornero* rule under which petitioner contends the absence of witnesses can never justify discontinuance of a trial. Such a rigid formula is inconsistent with the guiding principles of the *Perez* decision (*United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824)) to which we adhere. Those principles command courts in considering whether a trial should be terminated without judgment to take "all circumstances into account" and thereby forbid the mechanical application of an abstract formula. The value of the *Perez* principles thus lies in their capacity for informed application under widely different circumstances, without injury to the defendants or to the public interest.

*Id.* Likewise, here the court declines to find that the magistrate erred by failing to apply only the holding in *Cornero*. The magistrate judge correctly took all the circumstances into account in analyzing whether the trial court erred by finding manifest necessity warranted the declaration of a mistrial. And, in fact, the magistrate judge cited to a passage in *Downum v. United States* where the Supreme Court quoted *Cornero,* and stated that each case must turn on its facts. (Report at 8-9). The court finds that the magistrate judge did not err in mechanically applying the holding in *Cornero*, and instead analyzed all the facts.

**D. *Downum v. United States***

Petitioner contends that the magistrate judge erred her application of the holding in *Downum v. United States*, 372 U.S. 734. He contends that the magistrate judge indicated that she had doubts regarding whether there was manifest necessity based upon the magistrate judge's reference to Petitioner's arguments as having been "well made" (Report at 10). (ECF No. 39 at 10).

In *Downum v. United States*, the Supreme Court held that the Double Jeopardy Clause was violated where a trial judge granted a mistrial after finding manifest necessity when a prosecution witness did not show up to testify. 372 U.S. at 737-38. The prosecution had not subpoenaed the

---

Court concluded that there was "manifest necessity" for the reprosecution under the circumstances. 336 U.S. at 691.

witness. The Court held that "[t]he situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict." *Downum*, 372 U.S. at 737 (internal citations omitted). Essentially, "when the [prosecutor] impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance." *Id*. The Court stated that it resolved any doubt in favor of liberty. *Id.* at 738.

The court disagrees with Petitioner's suggestion that the magistrate judge had doubts. The magistrate judge's references to an argument as being well made does not equate to doubts as to the conclusion that there was manifest necessity to warrant the declaration of a mistrial. Moreover, as the magistrate judge found, here, the State issued a subpoena requiring Grant to appear at Petitioner's trial and, thus, had secured its witness before the jury was sworn, which distinguishes the instant case from *Downum*. Accordingly, the court finds this objection to be without merit.

**E. Harmless Error**

Petitioner contends that the magistrate judge used a harmless error analysis based upon her statement that "[t]o the extent Petitioner contends the trial court should have granted a continuance, the undersigned cannot agree that the judge's failure to do more gives rise to a constitutional violation." ECF No. 39 at 11 (quoting the Report at 11). The court declines to read a harmless error analysis into this one sentence, and, thus, finds Petitioner's objection to be without merit.

**F. Certificate of Appealability**

Petitioner contends that the magistrate judge erred by recommending that the court deny Petitioner a certificate of appealability. (ECF No. 39 at 11-14). Petitioner contends that the magistrate judge referred to his arguments as "well made" and jurists could differ on the magistrate judge's determination.

A certificate of appealability will not issue to a prisoner seeking habeas relief absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the court finds that Petitioner has made such a showing. Although the court finds that there was manifest necessity for the mistrial so as not to implicate double jeopardy, it is reluctant to conclude that reasonable jurists would not find its assessment of this claim debatable or wrong. Accordingly, the court issues a certificate of appealability on this issue.

## IV. Conclusion

After a thorough review of the magistrate judge's Report and the record in this case, the court finds that a second trial will not constitute a violation of Petitioner's double jeopardy rights, and thus, federal intervention is not appropriate. Accordingly, the court adopts the Report as modified. Therefore, Petitioner's motions (ECF Nos. 14 and 29) are **DENIED**; Respondent's Motion for Summary Judgment (ECF No. 17) is **GRANTED**; and Petitioner is **GRANTED** a Certificate of Appealability.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

September 11, 2018
Anderson, South Carolina

20